THE STATE OF GEORGIA, plaintiff in error, vs. B. H. BERRY, WELBORN HILES, and S. B. HEARD, defendants in error.

A recognizance given by the master for the appearance of his slave to answer a criminal charge, is no longer operative since the abolition of slavery.

*Scire Facias.* In Gordon Superior Court. Decided by Judge MILNER, April Term, 1866.

The *scire facias* set out the following bond, and recited its forfeiture by an order *Nisi* granted at April term, 1865:

" GEORGIA, GORDON COUNTY.

Know all men by these presents, that we, B. H. Berry, as principal, and Wilburn Hiles and S. B. Heard, as securities, are held and firmly bound unto Joseph E. Brown, as Governor, and to his successors in office, in the sum of six thousand

The State vs. Berry et al.

and five hundred dollars, to the true payment of which we bind ourselves, our heirs, executors, and administrators, jointly and severally, 'firmly,' by these presents. Sealed with our seals, and dated this 27th of July, 1863.

"The condition is such that whereas a slave, by the name of John, the property of said B. H. Berry, was committed by the proper Court to the common jail of said county, and after a hearing before the Inferior Court, under the *habeas corpus* writ, the said slave John was discharged from imprisonment, under bail of the said sum of six thousand five hundred dollars. Now should the said B. H. Berry produce the body of the said slave John at the next Superior Court, to be held in and for said county, on the first Monday in October next, then the above bond to be void; otherwise, to remain in full force and virtue.

B. H. BERRY, [L. S.]

WILBERN HILES, [L. S.]

S. B. HEARD, [L. S.]

"Approved: Thos. A. Foster, J. I. C."

At the April term, 1866, to which the *scire facias* was returnable, the same was demurred to on several grounds; among them, because the defendants were not bound in the recognizance to produce the negro at Court, or elsewhere, or to do anything else; and because no offence was specified in the recognizance.

The Solicitor General offered to show by writings, such as the warrant issued by a magistrate, the entry of arrest thereon, the order of the committing Court, the writ of *habeas corpus*, and the bond to prosecute, and by parol evidence, the cause of taking the recognizance, and the offence with which the slave was charged.

The Court sustained the demurrer, and dismissed the *scire facias*, on the ground that the recognizance did not state that the slave was charged with any crime or offence.

The errors alleged are, that the Court rejected the writings

and the parol evidence, sustained the demurrer, and dismissed the *scire facias*.

PARROTT, Solicitor General, for plaintiff in error.

AKIN, for defendant.

WALKER, J.

At the time the owner entered into this obligation for the appearance of the negro, he was, by law, authorized to control the person of the slave. By the constitution of the United States, of the State of Georgia, and the laws of Georgia, the relation of master and slave was recognised; and they guaranteed to the master the custody of the slave. For many purposes, the slave was not regarded by the law as a person, but as property simply. By the Code, sec. 4729 and 4730, the owner, agent, or employer of such slave, may give a bail bond, in the usual form, with sufficient sureties for the appearance of the slave to answer the charge preferred. The obligation is upon the owner, not upon the slave. The slave is no party to the contract,—is not bound by it; under the law he was incapable of binding himself; and in the whole matter is merely passive. The law authorizes a delivery to the owner of the slave, upon the owner giving sufficient sureties for his re-delivery to answer the charge made against him. The law, for a time, having divested the owner of the possession of his property, delivers it to him again upon the terms stipulated; and as owner he has the right to the custody of the slave, to enable him to make the surrender in discharge of his undertaking. The owner is not the surety of the negro; the owner enters into the obligation with sureties for *his* faithful performance of his contract, and not for the contract of the negro; for the negro is not bound by the contract at all.

While this state of facts exists, the Government, the State, being one party to the contract, intervenes and places it out

of the power of the obligor to perform his portion of the contract, by depriving him of the right to the custody of the slave. The slave is emancipated, made free to go at will, and the owner has no right whatever to control his actions. Shall the State, after thus placing it out of the power of the owner to comply with the contract, be permitted to enforce the obligation against him, notwithstanding "the render has become impossible by act or law of our own State?" *Trinder vs. Shirley,* 1 *Douglas R.,* 45, *and note* (*F*). "The general rule by which the Courts are governed, in the exercise of an equitable interference in these cases, is said to be this: that whenever by the act of law, a total impossibility or temporary impracticability to render a defendant has been occasioned, the Courts will relieve the bail from the unforseen consequences of having become bound for a party whose condition has been so changed, by operation of law, as to put it out of their power to perform the alternative of the obligation, without any default, laches, or possible collusion on their part." 1 *Tidd. Prac.,* 293. This doctrine has received the assent of this Court in *Barber vs. Irwin,* 34 *Ga. R.,* 27, and authorities cited. From all this it follows that defendant is discharged from his obligation by operation of law, and the Court did right to dismiss the *scire facias.*

Judgment affirmed.